May Term,
1856.

BURTCH
v.
THORN.

----

### BURTCH and Others *v.* THORN.

A receipt for money has no effect, nor is it binding upon any person, until it is delivered to the person in whose favor it is executed, or is received or otherwise recognized by him.

*A.* was the executor of *B.*, and guardian of *C.*, a minor. The estate of *B.* was indebted to the estate of *D.*, and of the sum due, *C.* was entitled to half, as a legatee of *D.* *E.*, *D.'s* executor, agreed with *A.* that half the debt might be retained by the latter, as guardian of *C.*, provided he paid the other half to *E.*, as such executor. *Held,* that *A.* could not credit himself as executor, and charge himself as guardian, with the half of said debt coming to his ward, until he had paid the other half of the debt to *E.*

APPEAL from the *Knox* Court of Common Pleas.

STUART, J.—This is a suit between two sets of sureties of one *Tracy*. The appellants were his sureties as the executor of *Charles A. Marshall*, for the sale of the real estate. The appellee was surety for *Tracy* as the guardian of *Charles Marshall*.

By his will, *Charles A.* devised the half of his estate to *Frances Tisdale;* the other half to his illegitimate son, *Charles*, the ward of *Tracy*.

*Frances Tisdale* held a mortgage on the estate of *Charles A.* for a large sum. By her will, she bequeathed one half of her estate, including this mortgage, to *Charles*, the minor; and appointed one *Richardville* her executor. In *September*, 1849, *Richardville*, executor, foreclosed this mortgage against *Tracy*, executor, and had a decree for 2,250 dollars.

*Marshall's* estate consisted chiefly of lands. *Tracy* applied to the Court for an order to sell the realty. In *December*, 1849, the order of sale was obtained, *Burtch* and *Smith*, the appellants, going sureties on his bond, in the penalty of 12,000 dollars, for the faithful discharge of his duties in the sale, and the application of its proceeds. Under this order, *Tracy* sold land to the amount of 10,000 dollars, converted, as is alleged, a large part of the proceeds to his own use, and in *October*, 1851, died insolvent.

It is further alleged that prior to his death, *Tracy* had become imbecile and unfit for business, by the use of stimulants and narcotics. A short time before his death, in 1851, *Tracy*, at the instance of *Burtch*, gave a receipt, as guardian of *Charles*, for half the *Tisdale* decree, 1,125 dollars, as received in *September*, 1849, of *Richardville*, executor. A corresponding credit was entered on *Tracy's* account as executor, said to be in *Burtch's* handwriting. It is not pretended that any money passed, or that there was ever any credit entered on the decree. In *Tracy's* settlement with the Probate Court as executor of *Charles A.*, this item was passed upon and allowed. In brief, *Tracy*, executor, and the appellants, his sureties, were credited half the *Tisdale* decree, by charging *Tracy*, guardian, with

May Term,<br>
1856.<br>
<br>
BURTCH<br>
v.<br>
THORN.<br>
<br>
Friday,<br>
May 30.

that sum, which, by reason of *Tracy's* insolvency, became virtually a charge against his surety, *Thorn.*

The complaint seeks to set aside the receipt, on the ground of want of capacity in *Tracy*, and fraud on the part of *Burtch.*

The defendants, *Williams* and *Richardville*, are defaulted. *Burtch* and *Smith* answer. The answer denies *Tracy's* insolvency, denies his default as executor, his incapacity when the receipt was given, and all fraud in obtaining the receipt or in its effect.

On these issues the cause went to a jury. Verdict for *Thorn*, the plaintiff below. Motion for a new trial over-ruled, and judgment. The evidence, and certain instructions excepted to by the defendants below, are made part of the record. *Burtch* and *Smith* appeal.

So far as the questions of fact are involved, we can not disturb the verdict. For instance, on the question of the capacity of *Tracy* at the time the receipt was given, the evidence is conflicting. Seven witnesses, including his wife, testify to his being imbecile and incompetent at that time, giving as a cause the use of stimulants and narcotics. Four witnesses, including the family physician, who had visited him daily for five weeks before his death, and for the last two weeks had visited him four or five times a day, testify that he was competent. In this state of the evidence, we should not feel at liberty to disturb the verdict of a jury either way. And the same principle will apply to the other questions of fact.

It only remains to examine the instructions complained of. One of these is as follows:

"The receipt in this cause is in favor of *Richardville;* he is a party to it. That receipt could not have any legal effect, or become binding on any one, until it was delivered to *Richardville*, or was received or otherwise recognized by him." This instruction is correct. *Ketcham* v. *The New-Albany and Salem Railroad Company, ante*, p. 391.

It is argued that as there was an agreement between *Tracy* and *Richardville* that the former should retain half the decree for his ward, *Charles Marshall*, he had a right

to transfer, as he did, without the knowledge of *Richardville*. But this argument does not seem to accord with the evidence. The decree referred to was in favor of *Richardville*, executor, v. *Tracy*, executor. Half of that decree was ultimately coming from the estate of *Tisdale* to the ward of *Tracy*. The evidence is that *Richardville* agreed with *Tracy* that half the decree might be retained, provided he paid the other half, 1,125 dollars, and the interest, to *Richardville*, and that *Tracy* paid only 784 dollars. So the condition on which alone, by the agreement, he could retain, was never performed. No money ever passed to *Richardville;* no credit was ever placed on the decree; no payment was ever made by *Richardville*. Hence, the doctrine of retainer contended for by counsel does not apply. Had the money been in *Tracy's* hands as executor, which belonged to his ward, and no third party intervened, then the theory of retainer would have applied, and the funds might well have been transferred from *Tracy*, executor, to *Tracy*, guardian. In the language of the authorities cited, "when a sole executor sustains the two-fold relation of executor and guardian, the law will, after the time limited for the settlement of the estate, adjudge the ward's proportion of the property to be in his hands in the capacity of guardian." 2 Gill and J. 220.—6 Dana 3. But here *Richardville*, the executor of *Tisdale*, is the disturbing element in the application of the principle above admitted. A receipt by *Tracy*, guardian, to *Richardville*, executor, without compliance with the condition precedent, on the consent of *Richardville* dispensing with it, was of no avail. *Tracy* might well act in the double capacity of executor and guardian; but he could not superadd that of executor of *Tisdale*. Some affirmative action on the part of *Richardville* was necessary. This position the instruction given correctly assumes. In connection with the facts and the evidence, the law on this point was properly given to the jury.

The other instructions complained of do not materially differ from this. Both the facts and the law are clearly with the appellee.

*Per Curiam.*—The judgment is affirmed with costs.

*R. Crawford,* for the appellants.

*S. Judah,* for the appellee.